[Cite as *Berger v. Berger*, 2015-Ohio-5519.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| SANDRA L. BERGER, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-G-3191** |
| THEODORE J. BERGER, JR., et al., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 12 D 000254.

Judgment: Affirmed in part; reversed in part and remanded.

*Gary S. Okin*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiff-Appellant).

*Deanna L. DiPetta*, *Andrew A. Zashin*, and *Amy M. Keating*, Zashin & Rich Co., L.P.A., Ernst & Young Tower, 950 Main Avenue, 4th Floor, Cleveland, OH 44113 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Appellant Sandra L. Berger ("Wife") appeals the trial court's divorce decree asserting that the trial erred in valuing Dreison International, Inc. ("Dreison"), a portion of which is marital property. Wife also claims that the trial court erred in excluding testimony of a witness, determining an equitable division of property, determining the amount and duration of spousal support awarded to Wife, not awarding her attorney fees, and failing to provide adequate security for her property award. For

the following reasons, we reverse the trial court's decision in regard to the amount and duration of spousal support. We also reverse the trial court's decision as to its valuation of the business based on its erroneous exclusion of relevant evidence, and reverse and remand regarding the trial court's failure to provide Wife adequate security for her future property award installments. All other aspects of the judgment are affirmed.

{¶2} Wife filed for divorce from Theodore J. Berger ("Husband"), and a trial was held in February of 2013 before a magistrate. The magistrate found that Dreison should be valued at approximately $7 million with the marital portion valued at approximately $4 million. The magistrate also awarded Wife spousal support in the amount of $5,000 for 90 months and concluded that Husband must pay Wife approximately $1.9 million on an established payment plan to equalize the division of property. Each side was ordered to pay their own attorney fees. The trial court adopted the magistrate's opinion in full, and this appeal followed.

{¶3} Wife asserts five assignments of error. We address her first and second assigned errors out of order for ease of analysis. Her second assigned error asserts:

{¶4} "The trial court erred and abused its discretion by granting Appellee's Motion in Limine, thereby excluding the testimony of Gary Wilson."

{¶5} Before trial, Gary Wilson, a friend and former employer of Wife made an offer to purchase Dreison from Husband. Husband then filed a motion in limine and show cause asserting that Wife had violated a protective order prohibiting the dissemination of information about Dreison by sharing said information with Wilson. Husband claimed that any testimony concerning Wilson's value of the company should

2

have been excluded. Wife did not file a response or proffer any testimony that Wilson might offer. Husband filed a supplemental brief asserting further reasons to exclude Wilson's testimony. The magistrate summarily granted the motion. However, Wife filed a motion to set aside the order on the basis that Wilson could testify as a lay witness to the value of the company due to Wilson's alleged offer to buy Dreison. The magistrate denied this motion without further explanation. The magistrate subsequently explained at trial that Wilson's offer to buy the company was not relevant because Husband was not a willing seller and since Wilson might not "pony up the money because it's not for sale."

{¶6} Evid.R. 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 states that all relevant evidence is generally admissible. Although Evid.R. 403 will exclude evidence whose probative value is substantially outweighed by its prejudicial effect, Husband has not made any argument that the evidence should be excluded per Evid.R. 403. Wilson's testimony concerning his offer to buy Dreison, if admitted, would have a tendency to make the value of the company closer to Wilson's offer price. Although the magistrate's concern over the genuineness of the offer could be valid, this goes to the weight of the evidence, not the relevancy of the evidence. Therefore, exclusion of the evidence based on relevancy was error.

{¶7} We review improper exclusions of evidence for harmless error. The harmless error rule set forth in Civ.R. 61 provides:

3

{¶8} "No error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict * * * unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

{¶9} In reviewing whether a substantial right of a party has been affected, the reviewing court must decide whether the trier of fact would have reached the same decision had the error not occurred. *Petti v. Perna*, 86 Ohio App.3d 508, 514, (3d Dist.1993).

{¶10} "'Ohio courts have not specified that only one method of valuation is appropriate when dividing marital property.'" *Kuper v. Halbach*, 10th Dist. Franklin No. 09AP-899, 2010-Ohio-3020, ¶12. "Rather, an equitable division of marital property depends upon the totality of the circumstances such that a flat rule for valuation is not appropriate in a property division." *Id.*

{¶11} "Ohio courts have recognized several methods for valuing a business, including: (1) capitalization of net profits (or straight capitalization); (2) capitalization of excess earnings; (3) the IRS method (known as the 'formula' approach), which subtracts a reasonable rate of return on tangible assets and salary from average earnings; (4) market value; and (5) buy-sell agreements. * * * When valuing a business, a trial court is neither required to use a particular valuation method nor is precluded from using any method." (Internal citations omitted.) *Id.* at ¶13.

{¶12} Counsel for Wife proffered for the record that Wilson had reviewed the financial performance and other information from Wife's counsel about the company.

4

The proffer indicated that Wilson had offered to pay $12 million for the company for 80 percent of the stock, with Husband retaining 20 percent and agreeing to stay on for a period of five years.

{¶13} Prior to this proffer, however, the magistrate asked Husband if his company was for sale. He responded that it has never been for sale and would never be for sale. The magistrate then stated: "So that's not even relevant. An offer for sale for a company that's not even for sale? People can offer any kind of monetary amount for a company that they're never going to have to pony up the money for because it's not for sale." The magistrate refused to allow Wilson's testimony stating: "It can't be a real offer if there is not a business for sale."

{¶14} To conclude that what Wilson was willing to pay for the company was not relevant because the owner was not willing to sell disregards the ultimate issue–the value of Dreison. This is evidence of valuation based on the market valuation approach. Thus, Wilson's testimony was relevant and the trial court erroneously excluded it to Wife's prejudice. Wilson reviewed the financial performance of the company and received "other information" from Wife's attorney. Wilson apparently had significant knowledge if he was willing to pay $12 million for 80 percent of the company. (This would translate into a $15,000,000.00 aggregate value as testified by wife.)

{¶15} Although there may have been issues regarding Wilson's credibility as a witness or concerns regarding how he arrived at this offer, these issues go to his credibility and not to the relevance of his testimony, and as such, could have been addressed on cross-examination.

{¶16} Therefore, the second assignment of error has merit. Wife was prejudiced as a result of this improper exclusion of relevant evidence.

{¶17} As her first assignment of error, Wife asserts:

{¶18} "The trial court erred and/or abused its discretion in its valuation of Dreison International, Inc. and its Subsidiaries ("Dreison") and in its valuation of the marital portion of Dreison."

{¶19} Within this assignment, Wife asserts that the magistrate's findings concerning the valuation of Dreison and the marital portion of the business were against the manifest weight of the evidence.

{¶20} "When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method, but can make its own determination as to valuation based on the evidence presented. *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995). Thus, we must affirm a trial court's determination if it is supported by competent, credible evidence and is not otherwise an abuse of discretion. *Moro v. Moro*, 68 Ohio App.3d 630, 637, 589 N.E.2d 416 (8th Dist. 1990)." *Chattree v. Chattree*, 8th Dist. Cuyahoga No. 99337, 2014-Ohio-489, 8 N.E.3d 390, ¶43 (8th Dist.)

{¶21} While the trial court is not bound to use one valuation method over another, it is nonetheless restricted to the valuations in evidence. A trial court cannot devise its own value that falls between the parties' respective expert's testimony. *Rodriguez v. Rodriguez*, 11th Dist. Geauga No. 89-G-1498, 1990 Ohio App. LEXIS 1448, *4-5 (Apr. 13, 1990); *McCoy v. McCoy*, 91 Ohio App.3d 570, 578, 632 N.E.2d 1358 (8th Dist.1993) (holding that if the "trial court summarily arrives at a valuation of an

asset or property, even though between the two extremes of the opposing parties' witnesses, without an evidentiary predicate, such would be error."). Although a trial court is free to choose between the values presented by the parties according to the weight of the evidence, it is not free to deviate from the evidence before it. *Focke v. Focke*, 83 Ohio App.3d 552, 556, 615 N.E.2d 327 (2d Dist.1992).

**{¶22}** For example, if wife's expert determines that the value of a marital asset is $10 million and the husband's expert testifies that the value is $5 million, the court cannot on that evidence alone set the value at $7.5 million. However, if wife's expert testifies that husband's expert used an improper multiplier in reaching his valuation and then provides an opinion as to the proper multiplier, the court could use either multiplier in determining valuation, thereby reaching a differing value supported by the evidence. *McCoy*, supra.

**{¶23}** The magistrate made the following findings in regard to the valuation of Dreison:

**{¶24}** "23. Husband has a 99.85% ownership interest in Dreison International, a privately held company whose headquarters are in Cleveland, Ohio. Dreison owns and operates manufacturing companies in Ohio, Texas, Mexico, and China.

**{¶25}** "24. Dreison owns DCM Manufacturing, Inc., and Maradyne Corp. The other component of Dreison is Von Weise, LLC, a single member Limited Liability Company owned 100% by Maradyne.

**{¶26}** "25. DCM Manufacturing, Inc. specializes in manufacturing, sales, and servicing of products for mobile HVAC units and industrial heat transfer markets. It

manufactures parts used in school buses, agricultural vehicles, construction, heavy truck markets and marine markets.

{¶27} "26. Maradyne Corp. manufactures pumps, air and hydraulic starter motors for oil rigs, filters, hydraulic motors used on heavy duty trucks, mining and agricultural equipment, ATVs and boats.

{¶28} "27. Von Weise, LLC. designs and manufactures horsepower motors, gear motors, actuators, and smaller gear parts used in ice machines, tread mills, hospital beds, vending machines and medical examination tables. Von Weise, LLC. was acquired, in June 2010.  It's [sic] operations include zinc die casting and machining.

{¶29} "28. Husband owned approximately 10 shares of Dreison stock prior to the parties' marriage; his ownership in Dreison was partly gifted to him by his parents and partly accumulated.  The parties could not agree on a value for husband's share, or to a value for the marital portion, i.e. the appreciation in value of the business during the marriage.

{¶30} "29. Both parties retained experts to establish the fair market value of Husband's 99.85% equity interest in Dreison, on a controlling basis as of June 30, 2011, and to determine the value of the marital share of the equity interest.  Husband hired John D. Davis (Davis & Company) to value the business.  Wife originally hired Eddie Blaugrand, but dismissed him and then hired Robert A. Ranallo (Skoda Minotti).

{¶31} "30. Both experts presented testimony as to the value of Husband's interest in Dreison.  They each opined as to the perceived errors contained in the opposing expert's report and the analysis conducted by the opposing expert.

**{¶32}** "31. Mr. Ranallo determined that the fair market value of Dreison and it's [sic] subsidiaries is $10,500,000.00 and the fair market value of the marital portion is $9,387,672.00.

**{¶33}** "32. Mr. Davis determined that the fair market value of Dreison is $7,006,375.00 and the fair market value of the marital portion is $4,029,686.00.

**{¶34}** "33. The experts are $3,493,625.00 apart in terms of their opinions as to the fair market value of Dreison, and even farther apart with regard to their opinions as to the value of the marital portion of the Company. In that regard the experts are $5,357,986.00 apart.

**{¶35}** "34. Wife testified that she believes Dreison is worth $15,000,000.00 because her former employer and friend, Gary Wilson, made a written offer to buy it for $15,000,000. She did not testify with regard to a lay opinion as to the value of the marital portion.

**{¶36}** "35. The Courts are limited to choosing one valuation over the other, or finding another valuation if the court can state a basis to achieve such a 'middle of the road' estimate. In this case, the evidence and testimony at trial did not provide a basis for an adjustment to the evaluations. The Court must choose either the business evaluation of Mr. Ranallo or that of Mr. Davis.

**{¶37}** "36. Mr. Ranallo described Dreison as 'a very diversified company' with a variety of products and a varied clientele. He described Dreison as a 'multifaceted' business which provides services to various segments of society. He opined that the diversification of the company means less risk, because if one segment of Dreison does not perform well, the other segments won't be affected. He testified that there

9

was some risk because Husband and a few other 'key' employees are so integral to the Company's operation.

**{¶38}** "37. Mr. Davis described Dreison not as diversified, but instead 'fragmented.' He testified that a 'diversified' company is one that while it enters different markets, it maintains a common core; and that a 'fragmented' company has no common thread. He opined that the only common thread Dreison has with it's (sic) subsidiaries is it's [sic] management team. He testified that DCM, Maradyme, and Van Weise have nothing in common, that they serve different segments of the population, that they have different clientel [sic].

**{¶39}** "38. Mr. Davis testified about the growth of Dreison. He explained that it's (sic) growth was by acquisition, not through organic growth; it acquired different lines of businesses. He testified that the problem with this type of growth is the company has to increase it's [sic] debt by acquiring the businesses in order to grow. As a result, he opined, the company is highly leveraged and carries a lot of debt on it's [sic] books which is risky because it may not have enough cash to cover the debt.

**{¶40}** "39. Mr. Davis explained during his testimony that part of the reason that he valued Dreison at a lower fair market value was that Dreison's debt increased, ($5.6 million) and that the debt causes a reduction in the fair market value of the company.

**{¶41}** "40. Both experts completed income and asset analysis in calculating their respective evaluations of Dreison.

**{¶42}** "41. Mr. Ranallo also completed a market approach to the evaluation. Mr. Davis testified that he considered the market approach, but decided that it would lead to a dead end so did not complete a market analysis.

10

"Market Approach Valuing Dreison

{¶43} "42. The market approach in evaluating a business involves looking at other similar companies and comparing them to determine the predictive value of what the company might sell for.

{¶44} "43. Mr. Ranallo explained the use of Standard Industrial Classification Codes ('SIC codes') when employing the market approach. He testified that the purpose of using SIC codes it to try to group 'like' companies so they can be compared. Information about a company is in-putted with regard to the subject company, in this case, Dreison, and the computer finds 'like' companies to compare it to in order to determine the predictive value of what Dreison might sell for."

{¶45} "44. Mr. Ranallo completed the market approach analysis and found the fair market value of Dreison to be $14,000,000.

{¶46} "45. Mr. Davis did not complete the Market approach analysis because he found that due to the 'eclectic' nature of Dreison he could not find credible or reliable comparables. He did not come up with a value using the market approach.

{¶47} "46. With regard to Mr. Ranallo's analysis using the Market approach, Mr. Davis was critical of Mr. Ranallo's use of publically traded companies in comparison to Dreison. He testified that the use of much larger, publicly traded companies in comparison to a smaller privately held company leads to inaccurate and unreliable results. He opined that the companies on the stock exchange have sales in the billions and have $15 billion in capital compared to Dreison, which had sales of only $40 million in 2011-2012. Mr. Davis testified that the use of SIC codes in this situation is wrong, that Dreison can't be compared to regular 'HVAC' companies because, it's [sic] HVAC

products are specified for mobile units. He testified that neither can it be compared to 'Auto Parts Industries' because it bears no relationship to the auto industry.

"Asset Approach Valuing Dreison

**{¶48}** "47. Both experts explained the Asset Approach to valuing a business as being a measurement of the fair market value of all assets reduced by it's (sic) liabilities.

**{¶49}** "48. Mr. Ranallo completed an asset approach valuing Dreison at $7,800,000.

**{¶50}** "49. Mr. Davis completed an asset approach valuing Dreison at $6,522,751.

**{¶51}** "50. Neither expert relied on the asset approach when reaching their final conclusion about the fair market value of Dreison.

"Income Approach Valuing Dreison

**{¶52}** "51. The experts explained that the Income Approach measures the company's value based on the ability to generate cash flow indefinitely.

**{¶53}** "52. Mr. Davis testified that he used the 'capitalization of earnings' method to consider the historical cash flow, i.e. what Dreison has done in it's [sic] past. He testified that it is key to look at the company's history in order to get a complete picture of any company.

**{¶54}** "53. Mr. Davis then used the 'discounted cash flow' methodology to look forward, to see what Dreison will do in the future. He looked at the projections Dreison provided. He testified, and it was not disputed, that Dreison does not always provide projections, [sic] instead it provides projections only when the bank requires it. Davis

12

opined that because Dreison only provides projections at the bank's request, the projections are 'optimistic.' He reviewed Dreison's projections for 2008, 2012, 2013, and 2014 and found that the company did not meet it's [sic] projections for 2008 or 2012. He opined that this is in part because the economy slowed down, but also because the projections were not realistic to begin with, they were optimistic. He testified that the further out projections go the less reliable they are and the more likely to be inaccurate.

**{¶55}** "54. Mr. Ranallo testified that as he did his analysis using the income approach he did not use the capitalization of earnings method to look back at the past to determine how Dreison did historically. Instead he used only the discounted cash flow methodology; looking at and relying only on the projections provided by Dreison. He testified that because of the recession, looking back would not provide reliable information.

**{¶56}** "55. Mr. Davis disagreed with Mr. Ranallo's use of only looking at the future in terms of the projections and not 'looking back.' He testified that a buyer will not buy based on 'just' projections, but will want to see what the company did historically as well.

**{¶57}** "56. Mr. Davis relied on the income approach to arrive at his final value of $7,006,375 for Dreison.

**{¶58}** "57. Mr. Ranallo used the income approach to reach his final valuation finding that Dreison has a fair market value of $10,500,000.

"Valuation of the Appreciation (Marital Portion of Dreison)

13

**{¶59}** "58. As indicated above, Husband's 99.85% ownership of Dreison was partially gifted, and partially acquired or accumulated.

**{¶60}** "59. Husband's original pre-marriage interest in Dreison came from his parents. He received further gifts of stock from them in 1989 and 1997. By 1997, Husband owned approximately 40% of Dreison. Husband then acquired his brother's interest in Dreison by spinning off one of the businesses, 'Supertrapp' to him in exchange for his equity interest in the company. If for some reason, Supertrapp defaults, Dreison could have contingent liability.

**{¶61}** "60. Mr. Ranallo contends that the marital portion of Dreison, i.e. it's [sic] appreciation, is valued at $9,387,672.00.

**{¶62}** "61. Mr. Ranallo testified that he relied on gift tax returns to calculate the marital portion of the interest.

**{¶63}** "62. Mr. Davis, who found the fair market value of the marital portion to be $4,029,686.00[,] testified that looking at the gift tax returns is useful, but he argues that they should not be the only thing considered when determining the value of the marital portion of Husband's interest in Dreison.

**{¶64}** "63. Mr. Davis testified that an argument could be made that there has been no appreciation. It was not disputed that from 1993-1997, Dreison had income of $2,485,572.00 nor was it disputed that Dreison's income decreased during the later years 2007-2011 when Dreison had income of $1,165,794.00; a reduction in income of $1,319,778.00.

**{¶65}** "64. Mr. Davis pointed out that Dreison is not performing as well now, as it did in earlier years. In 1993-1997 Dreison made more money and was debt free, now it

14

makes less money and is full of debt.  Mr. Davis opined that Husband now owns more of a company that is worth less.  He pointed out that the gift tax returns that were solely relied on by Mr. Ranallo were from the tax years 1989 and 1997, years when there was more income and less debt earlier.

{¶66} "65. Mr. Davis testified that in calculating the fair market value of the marital portion of Dreison he considered the gift tax returns, then applied the methodologies described earlier in this Decision.  He calculated the equity value at $5,002,931.00 then considered appreciation of Husband's share to reach a final value of $4,086,157.00.

{¶67} "66. Husband points out that while Mr. Davis conducted a site visit to Dreison's headquarters, Mr. Ranallo did not, [sic] instead he sent an associate to the site. Mr. Ranallo's failure to personally conduct a site visit does not make his evaluation less credible.

{¶68} "67. Mr. Davis's consideration of the capitalization of earnings in his Income Approach, i.e. a look back at the historical cash flow of Dreison, in addition to considering the company's projections; and his consideration that Dreison's growth was by acquisition as it bought lines of business which increased it's [sic] debt, thereby lowering it's [sic] fair market value supports his finding that the fair market value of the business is $7,006,375.00.

{¶69} "68. Mr. Davis's consideration of the gift tax returns, and his analysis using the methodologies and income approach, along with his consideration of the fact that Dreison is not performing as well as it did before, in that it is earning less income and

15

incurring more debt, supports his finding that the fair market value of the marital portion of the business is $4,029,686.00."

**{¶70}** Under the manifest weight of the evidence standard, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202 ¶24, 865 N.E.2d 1264, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 10 Ohio B. 408, 461 N.E.2d 1273 (1984).

**{¶71}** First, Wife argues that the magistrate's valuation was in error because Wife testified that she believed that Dreison is worth $15,000,000 as Wilson, a former employer and friend, made an offer to buy Dreison for that amount. Consequently, because, according to Wife, the making of an offer is the best way to determine the valuation, the trial court erred in not accepting the $15,000,000 figure. Although her argument ignores the fact that the trial court was free to credit the testimony of experts over hers as to the value of the company, Wife is correct that the trial court failed to allow Wilson's testimony on this issue.

**{¶72}** Next, Wife argues that that the trial court erred in accepting the conclusions of Husband's expert witness (Davis) over that of Wife's expert witness (Ranallo) as to the valuation of Dreison. First, Wife argued the lower court erred in not concluding that Ranallo was more qualified than Davis because Ranallo, unlike Davis,

16

was previously appointed as a special master to perform complex business valuations. It is not immediately apparent why such an appointment makes Ranallo's testimony more credible than Davis in all valuations, and Wife fails to provide any such reason or case law in support of her claim. Therefore, this reason cannot support Wife's argument that the trial court erred.

**{¶73}** Next, Wife argues that Davis's statement that Ranallo's expert report was "solid" should be given significant weight because it was an unsolicited observation between professionals. This argument fails to show the trial court erred. Given the disagreements between Davis and Ranallo concerning the valuation of Dreison, the weight of evidence does not indicate Davis's comment was an endorsement of Ranallo's report in full.

**{¶74}** Next, Wife argues that Davis's credibility is diminished because he had been paid $18,000 for his services as of the date of his trial. Husband's payment for Davis's services as an expert does not, as a matter of law, render Davis incredible.

**{¶75}** Next, Wife argues that Davis's conclusions are less credible than Ranallo's conclusions because Davis, unlike Ranallo, never expressly stated his conclusions were made with a "reasonable degree of certainty" for individuals in his field of expertise. Wife has provided no case law supporting her claim that an expert's failure to utter these magic words renders his testimony less credible than another expert who did say these magic words. Wife has failed to demonstrate error.

**{¶76}** Next, Wife argues that the magistrate erred in concluding that Davis's testimony indicated that Dreison's debt lowered its fair market value. Because the magistrate relied upon Dreison's increased debt as a basis for reaching its valuation of

the company, Wife posits this misinterpretation is grounds for reversal. Both parties agree that Davis testified that Dreison's 2012 financial statements reflect Dreison had acquired $5.6 million in debt to purchase Green Lease Manufacturing, Inc. According to Wife, Davis testified that acquisition of this debt would not negatively impact the fair market value of the company because the debt was acquired with the purchase of an asset. Consequently, according to Wife, Davis conceded from an asset valuation standpoint there would be no reduction in value of the company, and that the new asset would provide revenue to support the new debt.

{¶77} Wife's argument grossly misstates Davis's testimony. First, Davis testified that an income approach analysis, rather than an asset valuation, was the appropriate valuation method. Second, Davis unequivocally states several times that he was of the view that from a cash flow perspective, the debt would negatively impact the company's fair market value.

{¶78} Next, Wife argues that Davis's concession that he did not complete the market valuation approach makes his expert opinion worthless. As a preliminary matter, Wife acknowledges that the evidence indicates that Davis is only required to consider and not complete all three of the market valuation approaches. Davis's testimony indicates that he believed that there were no similar companies to Dreison on the market. Because the market valuation approach requires an expert to compare the company in question to other similar companies to determine a value for the company, it is not a surprise that Davis did not complete a market valuation approach. Consequently, the trial court's decision to reject that approach is supported.

18

**{¶79}** Next, Wife argues that Davis was an incredible witness because one of his valuations of Dreison is lower than an asset valuation approach. Both parties admit that the asset valuation approach represents the "floor value" of the company and that Davis's asset valuation approach yielded a value of $6,522,751. According to Wife, Davis's conclusion for the value of the company for the income based approach was approximately $2 million lower than Davis's value based on the asset valuation approach. However, upon review of Davis's report, it appears that Wife incorrectly referenced a component of Davis's income based approach rather than Davis's ultimate value for an income based approach, which was approximately $1 million greater than Davis's value for the asset valuation approach. Therefore, Wife's argument has no factual basis.

**{¶80}** Next, Wife argues that the magistrate's finding that "Ranallo testified that as he did his analysis using the income approach he did not use the capitalization of earnings method to 'look back' at the past to determine how Dreison did historically" implied that Ranallo did not perform a historical analysis of Dreison when performing an income valuation approach, when Ranallo did perform such an analysis. However, Wife's argument is misplaced because she does not quote the remaining part of the paragraph after the quoted sentence. The magistrate continued that "[Ranallo] used only the discounted cash flow methodology; looking at and relying only on the projections provided by Dreison. He testified that because of the recession, looking back would not provide reliable information." Consequently, the magistrate's findings cannot be read to imply that Ranallo did not include any historical data in the income

19

valuation approach, but rather that such information was limited to projections in the discounted cash flow methodology. Accordingly, Wife's argument has no factual basis.

**{¶81}** Next, Wife asserts that the magistrate omitted facts relating to the marketability discount to the value in the discounted cash flow method. However, Wife fails to explain why such an omission demonstrates reversible error. Wife's "argument" merely points out that the magistrate did not include something in her decision.

**{¶82}** Next, Wife argues that Davis's marketability discount[1] was incredible for two reasons. First, Wife argues that it was too high (21.3 percent) given that Husband was a majority owner of Dreison and majority ownership results in a lower marketability discount. Wife also argues Davis's report improperly relied upon studies from minority controlling owners because Husband was a majority owner. Husband asserts that these facts do not indicate Davis's report was invalid because Davis explained that the "fragmented nature" of Dreison meant it would take a longer time to sell causing his marketability discount to increase. In regard to the use of studies involving minority owners, Davis testified that the use of the studies were appropriate in calculating the marketability discount because the stocks at issue in Dreison were restricted stocks, and according to Davis, the restricted nature of the stocks affected the marketability discount whereas the minority position of the stocks were "of no consequence what[so]ever to this analysis." The magistrate had discretion to accept Davis's explanation for the use of the minority owner studies as credible or incredible, and therefore Wife has failed to demonstrate error.

---

1. A marketability discount measures the difficulty in selling a closely held company and the associated costs in proceeding to sale. It is used in all methods of valuing a company.

**{¶83}** Finally, Wife argues that Shannon Pratt, "the undisputed and acknowledged expert with respect to business evaluation procedure" according to Wife, would not approve of Davis's methodology in his report and therefore the magistrate should have rejected Davis's analysis. This argument is without merit. The magistrate was not bound to accept Pratt's methodology regarding business evaluation procedure because of his reputation.

**{¶84}** Accordingly, and as stated under the second assigned error, we find the trial court erred in accepting the magistrate's decision regarding the valuation of Dreison in light of the exclusion of Wilson's testimony.

**{¶85}** Wife also challenges the valuation of the marital portion of Dreison as against the manifest weight of the evidence.

**{¶86}** First, Wife claims that Davis erred in conducting an independent analysis of the appreciation value of the marital portion of Dreison. Instead she claims he should have relied on the value of the stocks as reported on gift tax returns. According to Wife, Husband's use of two different values for the stock during the same period represents an inconsistent statement that makes Davis's calculation of the report unreliable. This argument is without merit. Davis testified that it would be improper to rely solely on the gift tax returns as evidence of the fair market value of the stocks and that it was important to conduct an independent analysis to determine the value of the stocks. The trial court was free to credit Davis's testimony.

**{¶87}** Next, Wife argues the magistrate erred in accepting Davis's report because his analysis failed to meet "current standards" in conducting a business valuation. In support of this assertion, Wife claims that part of Davis's report

21

acknowledges that his analysis is not compliant with current valuation standards. However, our review of Davis's report reveals that he was criticizing the valuation performed by Meade & Moore as noncompliant with current valuation standards. Therefore, this argument lacks a factual basis.

**{¶88}** Next, Wife argues that Davis's report contains no discussion of the company background or information "regarding the Economic and/or Business and Industry Outlook" in 1997. According to Wife, Davis testified that both were to demonstrate that a report complies with current valuation standards. However, Wife provides no citation to the record to support her claim regarding Davis's testimony. App.R. 16(A)(7) requires a brief to provide citations to the record where necessary. Although the court disfavors punishing a party who accidentally fails to provide a citation to the record, the transcript in this case is voluminous and contains no word index. Therefore, we will not evaluate this argument. Even if a citation to the record were provided, Wife provides no explanation as to how these omissions materially affected Davis's valuation of the company. Therefore, Wife has not shown that any of the alleged omissions demonstrates error.

**{¶89}** Next, Wife argues that the magistrate claimed that Davis only relied upon an income approach to value appreciation, but the magistrate claimed that Davis relied upon an asset and market approach as well. Even if this claim is true, Wife fails to demonstrate how the magistrate's statement demonstrates reversible error as the trial court was not required to use a particular valuation method in reaching its determination of value. *Chattree v. Chattree*, 8th Dist. Cuyahoga No. 99337, 2014-Ohio-489, ¶43.

**{¶90}** Next, Wife argues that Davis used a different value figure for Dreison to calculate the marital portion of the asset from the value he ascribed to the company in the rest of his report, and that this practice, according to Wife, contradicts Davis's testimony regarding "current standards" for valuation. Wife provides no citation to record as to what "current standards" require for valuation and Wife provides no definition as to what are the "current standards" for valuation. Accordingly, under App.R. 16(A)(7), we will not evaluate this argument.

**{¶91}** Finally, Wife argues that Davis's calculations for the marital portion are incorrect because the value of all of the stock gifts made to Husband in the years preceding 1997 were valued at the 1997 level for stocks. Without citation to the record, Wife claims that "[i]t is beyond question" that the value of the stocks preceding 1997 was "probably less" or at least different. We will not assume facts about the value of the pre-1997 value of stocks to reverse the trial court, as we are limited to the record on appeal. App.R. 9(A)(1). Wife had the responsibility of procuring these facts at the lower court to lay the foundation for her appeal.

**{¶92}** The first assignment of error has merit in light of our conclusion that the trial court improperly excluded relevant evidence as to the company's value. On remand, the trial court shall revisit its valuation of Dreison and consider not only the parties' respective experts' testimony and assessments, but also must allow Wilson to testify about his offer to buy the company and his bases for said offer. Thereafter, the trial court must re-determine the valuation of Dreison as well as the value of the marital portion of Dreison.

**{¶93}** As her third assignment, Wife asserts:

{¶94} "The trial court erred with respect to its orders relating to the payment of funds necessary to equalize the property division herein."

{¶95} As part of the division of property, the magistrate ordered Husband to pay Wife approximately $1.9 million to ensure the property division was equitable. Because the magistrate found that Husband did not have the ability to pay the award immediately, the magistrate established a payment schedule for the award to be paid over 12 years. The magistrate did not, however, order that Husband pay any interest on future payments under this schedule.

{¶96} On appeal, Wife asserts that the trial court erred in not awarding interest on the future payments in accordance with R.C. 1343.03(A). That section states: "when money becomes due and payable upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code * * *." As we understand it, Wife claims that the issuing of the judgment causes the entire balance of $1.9 million to become "due and payable." In support of her assertion Wife directs our attention to *Fisher v. Fisher*, 8th Dist. Cuyahoga No. 95821, 2011-Ohio-5251, and *Humphrey v. Humphrey*, 11th Dist. Ashtabula No. 2006-A-0083, 2007-Ohio-6738. In those cases, the respective appellants were attempting to collect interest on money that had not been paid on the specified due date in the judgment for divorce. *Humphrey*, at ¶46-47; *Fisher*, at ¶2, 24-26.

{¶97} The situation here is markedly different. Under the terms of the magistrate's order, approximately $50,000 was due upon the filing of the judgment

24

entry of divorce, and installments of $150,000 are due upon future dates until the $1.9 million balance is paid in full. Wife has not asserted that Husband has failed to comply with any payments under the schedule; therefore, *Humphrey* and *Fisher* are inapplicable to the current case. Furthermore, Wife's allegation that she is entitled to interest on the future payments is without merit as trial courts are vested with discretion in deciding when an amount of a judgment is due. *McKay v. McKay*, 2d Dist. Montgomery No. 23702, 2010-Ohio-3348, ¶37. Because the trial court established a payment plan, future payments are not due until the date specified in the magistrate's order. As R.C. 1343.03 is only applicable when judgments become "due," Wife's claim for interest on the future payments is without merit.

**{¶98}** Next, Wife argues that the trial court erred in failing to provide sufficient security for the funds being used to equalize the property division. Specifically, Wife argues that the trial court should have required Husband to maintain a life insurance policy as security for the funds. Wife acknowledges that the magistrate ordered a stock pledge as security for the payments, but claims that "the Magistrate's findings concerning various loan covenants that exist with Appellee's business lender, which restrict certain of Appellee's actions in the operation of Dreison, strongly suggest that appellee's shares of stock have already been pledged to the lender as collateral." Wife claims that the stock pledge is insufficient collateral given the stock's suspected status as collateral for other loans.

**{¶99}** A trial court is required to equitably divide the parties' marital property, and it is afforded wide discretion in fashioning its division. *Saluppo v. Saluppo*, 9th Dist. Summit No. 22680, 2006-Ohio-2694, ¶7. As Wife contends, a trial court has discretion

25

to secure a property division by ordering a spouse to maintain a life insurance policy for the other spouse's benefit. *Zaccardelli v. Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878, ¶42.

{¶100} In *Budd v. Munka*, 9th Dist. Summit No. 27057, 2014-Ohio-4185, ¶17, the Ninth District Court of Appeals held that the trial court abused its discretion in fashioning an award that was inequitable because it failed, in part, to order the husband to provide security for the marital property award that was to be paid over the course of ten years.

{¶101} Here, the trial court ordered Husband to make payments totaling approximately $1.9 million as Wife's portion of the property settlement. This sum was to be paid over 12 years with the pledge of Dreison stock as her only security. While the magistrate properly recognized the need to provide Wife with security, the court did not take evidence on the adequacy of the stock pledge as security. However, there was testimony that Dreison has significant debt. Although there is no evidence that the stock has been pledged to a bank, it would not be unusual if it has been previously pledged in light of the company's substantial debt. Even if the stock is not pledged, there is a significant concern whether it, standing alone, provides adequate security since there are no limitations on Husband's ability to encumber Dreison with additional debt that could render the stock worthless. Thus, this argument has merit because there is nothing establishing that the security ordered is adequate.

{¶102} Wife next asserts that the trial court excluded testimony concerning whether Husband ever received an offer to buy Dreison and such testimony was relevant to determine whether it was equitable to sell Dreison in dividing the property.

From there, Wife appears to assert that had this evidence been admitted, the trial court would be required to order the sale of Dreison as an equitable division of property instead of creating a 12-year payment plan to equalize the division of property.

{¶103} In regard to the offer to buy, Wife points to the following exchanges in the transcript demonstrating error:

{¶104} "[Wife's Trial Counsel:] You received an offer to settle, I mean to purchase your company, did you not, in January of 2012?

{¶105} "[Husband:] No I did not.

{¶106} "Did you receive a communication indicating someone was interesting (sic) in buying your business –

{¶107} "[Husband's Trial Counsel:] Objection.

{¶108} "The Magistrate: Overruled.

{¶109} "[Wife's Trial Counsel:] – in January 2012?

{¶110} "I received a copy of an email that had some numbers on a piece of paper.

{¶111} "The Magistrate: Well, is your company for sale?

{¶112} "Husband: My company has never been for sale. . . . It's not for sale today and will never be for sale.

{¶113} "The Magistrate: So that's not even relevant. An offer for a sale of a Company that's not even for sale? People can offer any kind of monetary amount for a company that they're never going to pony up the money for because it's not for sale.

{¶114} "[Wife's Trial Counsel:] Did you ever indicate, sir that you would sell your business for $10,000,000.00?

{¶115} "Objection.

27

{¶116} "Sustained."

{¶117} Later on, during the direct examination of Wife, the following exchange occurred:

{¶118} "[Wife's Trial Counsel:] And what is your opinion as to the value [of Dreison]?

{¶119} "I believe it's worth $15,000,000.00.

{¶120} "And what do you base that on?

{¶121} ". . .

{¶122} "I base it on an offer that was made by Gary Wilson, a cash offer, that would establish the value of [Husband's] business, and it was in response to a meeting that we had to talk about the valuation proposals in December when John said he would sell the company –

{¶123} "Objection. . . .

{¶124} "Sustained.

{¶125} " – for $10,000,000.00.

{¶126} Within these two exchanges, Wife's trial counsel only asked about an offer to buy Dreison once, and the trial court permitted the answer to that question to stand over the objection of Husband's counsel. If Wife's complaint is in regard to the last question directed at Wife, that portion of Wife's testimony was properly excluded as hearsay. Evid.R. 801(C), 802. Accordingly, Wife's assertion is without merit.

{¶127} Next, Wife argues that the finding that Dreison was illiquid was against the manifest weight of the evidence and that the magistrate abused its discretion in establishing 12 years as the length of the payment plan because Dreison is not illiquid.

As we conclude the finding concerning Dreison's liquidity is supported by the evidence, there is no abuse of discretion.

{¶128} Wife first claims that the evidence shows that the magistrate ignored evidence that Husband could give himself a raise and that the loan covenants did not restrict Husband from increasing his salary. Wife's characterization of that portion of the transcript is misleading. In the cited section, Husband stated he possessed the authority to increase his salary so long as bank loan covenants were not violated. Husband did not testify that he possessed the *ability* to increase his salary. Wife also argues that Husband used his company credit card to pay $5,000-$10,000 of personal expenses, that such expenditures were "customary," and that these expenditures were one of the perks of business ownership. Although Wife's characterization of the testimony is accurate, Wife ignored Husband's testimony that these personal expenditures had to be paid back to the company and that he always paid back the personal expenditures.

{¶129} Wife argues that Dreison's ability to pay for the litigation in this matter[2] proves that it does not have liquidity problems. This argument is not persuasive for two reasons. First, Davis and Husband both provided evidence indicating that Dreison did not have liquid assets. Although Dreison's ability to pay for litigation expenses could show that Davis's and Husband's evidence is incredible, the trial court could have also concluded that Davis's and Husband's evidence is credible and that this litigation has only exacerbated the liquidity problems with Dreison. Consequently, there is competent credible evidence supporting the magistrate's finding concerning Dreison's liquidity and Wife's arguments are without merit.

---

2. Although not a party to this appeal, Dreison was a named defendant to the trial court below.

**{¶130}** Next, Wife argues that the trial court abused its discretion in not requiring Husband to pay a lump sum judgment to her in the event Dreison is sold. Ohio law requires courts to divide property equitably between the parties in a divorce. R.C. 3105.171(B). This, in most cases, requires the court to divide property equally. R.C. 3105.171(C)(1). The court enjoys broad discretion in fashioning an equitable division of marital property and its determination in crafting such an award will not be disturbed absent an abuse of that discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30. This court has previously observed that when an appellate court is reviewing a pure issue of law, "'the mere fact that the reviewing court would decide the issue differently is enough to find error * * *. [In] contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Sertz v. Sertz*, 11th Dist. Lake No. 2011-L-063, 2012-Ohio-2120, ¶31, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶67. Wife reasserts her concern that Husband may have already pledged his shares of stock as security to the bank for its loans to Dreison.

**{¶131}** She also argues that if Husband is not required to make a lump sum payment to her upon the sale of Dreison, he could simply substitute the security instead of paying a lump sum upon the sale of Dreison. As previously stated, we agree that the trial court erred in failing to provide Wife adequate security.

30

{¶132} Accordingly, the third assignment of error has merit to the extent that the trial court on remand must provide Wife adequate security for the future installments of her property settlement other than the pledge of stock. Moreover, the court may, if it chooses, require a lump sum payment upon sale as a portion of adequate security.

{¶133} As the fourth assignment of error, Wife asserts: "The trial court erred and/or abused its discretion with respect to both the amount and term of spousal support awarded to Appellant."

{¶134} In general, an award of spousal support is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Tremaine v. Tremaine*, 111 Ohio App.3d. 703, 706, 676 N.E.2d 1249 (2d Dist.1996).

{¶135} First, Wife claims that her bachelor's degree in business from the College of William and Mary has "no application in today's marketplace." This argument is not true. Wife also claims that the magistrate failed to include in her findings that Husband was at one point a certified public accountant. Although this is true, it is not apparent how this omission would affect the award of spousal support, and therefore, even if this constituted error, it is harmless error.

{¶136} Next, Wife claims that her training through the Chopra Center is not highly marketable. However, Wife testified that she had not looked for opportunities in Ohio, and she appeared to solely focus on relocating to California. Therefore, the magistrate could have concluded that Wife's opinion as to the opportunities in Ohio was a result of her lack of research rather than a lack of opportunity.

{¶137} Next, Wife claims that the magistrate's finding that the Wife's credit card debt was separate debt conflicts with her finding that Wife's classes with the Chopra

31

Center were paid with marital money because these classes were paid with the same credit cards. However, this argument overlooks the reasons why the magistrate found that credit card as separate debt. Specifically, Husband did not know of these credit cards, and the expenditures incurred were for luxuries and not necessities.

{¶138} Next, Wife asserts that the magistrate's findings that (1) if Wife had continued working as a secretary when she first met Husband, Wife might be making $60,000-$90,000 and (2) Wife would need 7.5 years to develop the necessary skills to become a secretary or become a yoga or meditation teacher are unsupported by the record. Husband has not directed our attention to any portion of the record that contradicts Wife's assertion. Our review of the record reveals that there is no evidence concerning the time necessary for Wife to enter the secretarial pool or monetize her yoga/meditation training. Consequently, we find that this finding is unsupported by the record, and therefore the trial court did not properly consider Wife's future income or the time necessary for Wife to become self-sufficient. Therefore, in this regard, the trial court abused its discretion in fashioning a spousal support award.

{¶139} Next, Wife asserts that the magistrate neglected Husband's ability to increase his salary at Dreison in fashioning a spousal support award. As previously explained, the magistrate was free to find that Husband did not possess the ability to increase his salary and consequently, this argument is without merit.

{¶140} Next, Wife implicitly argues that the magistrate's finding that the parties lived an "upper-middle class" lifestyle is incorrect because the parties were rich. Assuming this is error, it is not apparent how the parties being labeled as "rich" affects

32

the lower court's decision. Therefore, at best, the magistrate's description is harmless error.

{¶141} Next, Wife argues that the trial court abused its discretion in accepting the magistrate's decision because the permanent award of spousal support is lower than the temporary award of spousal support. This argument is without merit as a trial court does not abuse its discretion in awarding a permanent spousal support award that is lower than the temporary spousal support award. *See Grein v. Grein*, 11th Dist. Lake No. 2009-L-145, 2010-Ohio-2681, ¶63 (temporary spousal support awards are used to maintain the status quo); *Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶20 (noting that parties are not entitled to the same standard of living as during the marriage).

{¶142} Next, Wife argues that the magistrate's conclusion that Wife should or could derive income from the spousal support and property division is incorrect given "the parties' lifestyle, the cost of maintaining the home allocated to [Wife], and her lack of income." As Husband points out, this simply is not true. Under the property division payment schedule, Wife will receive $150,000 tax free, and an additional $60,000 through spousal support per year. Therefore, before factoring in any income Wife may receive from being employed, Wife will in the worst case receive $210,000 annually, which is only $40,000 less than Husband's salary. Because a party is not entitled to the same standard of living as they had during the marriage, the magistrate's finding is supported by the record.

{¶143} Finally, Wife asserts that the trial court abused its discretion by not ordering an indefinite spousal support award because several cases demonstrate that

33

trial courts *do not* abuse their discretion in awarding indefinite spousal support when the marriage is of a long duration. *See, e.g.*, *Lepowsky v. Lepowsky*, 7th Dist. Columbiana Nos. 08 CO 10, and 08 CO 29, 2010-Ohio-1544, ¶62. However, none of Wife's cases support the proposition that a trial court abuses its discretion when it *refuses to award* indefinite spousal support for a marriage that was of a long duration. Other Ohio courts have found that long marriages do not, as a matter of law, require indefinite spousal support awards. *See, e.g.*, *Mann v. Mann*, 4th Dist. Athens No. 09CA38, 2011-Ohio-1646, ¶35.

{¶144} Consequently, in regard to the trial court's predication concerning Wife's future earning capabilities and the need for her to acquire new skills, the assignment of error has merit. On remand, the trial court shall determine spousal support based on the current record or take additional evidence to the extent permitted. *See* Civ.R. 53(D)(4)(b).

{¶145} As her fifth assignment of error, Wife asserts: "The trial court erred and/or abused its discretion in denying an award of attorney fees and/or litigation expenses to Appellant."

{¶146} Within this assignment, Wife argues that the magistrate's finding concerning her earning potential as a secretary had she stayed employed is purely conjecture, and that courts have upheld attorney fees awards when one party's income is significantly higher than another party's attorney fees. Wife also implicitly attacks the magistrate's finding that Dreison was not liquid because Dreison could pay for its participation in this litigation. Wife further argues that the magistrate's finding that she unnecessarily delayed the proceedings was without merit because, as we understand

34

it, none of the deadlines in the Rules of Superintendence were violated. Finally, Wife protests the magistrate's reliance on "need" and "ability to pay" in its decision had no statutory basis.

{¶147} "Our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Neumann*, 8th Dist. No. 96915, 2012 Ohio 591, at ¶ 6, citing *Gourash v. Gourash*, 8th Dist. Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), and *Oatey v. Oatey*, 83 Ohio App.3d 251, 614 N.E.2d 1054 (8th Dist.1992).

{¶148} "Pursuant to R.C. 3105.73(A), a court may award all or part of reasonable attorney fees and litigation expenses to either party if the court finds the award equitable. In determining whether such an award is equitable, 'the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.' R.C. 3105.73(B); *Mlakar v. Mlakar*, 8th Dist. No. 98194, 2013-Ohio-100." *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶68-69.

{¶149} Wife's arguments are without merit. First, Wife's argument about the Ohio Rules of Superintendence is without merit as a delay in the proceedings can occur even though none of those rules are violated. Although we have previously noted that the trial court's finding concerning Wife's potential salary if she had been employed is unsupported by the evidence, Wife's decision to fire an expert evaluator increased both parties' litigation expenses. As such, the trial court's consideration of the unsupported finding is harmless error. As to Wife's liquidity argument, we have previously indicated

35

that argument is without merit. Finally, although "need" and "ability to pay" are not express statutory factors for a trial court to consider, the catch-all provision in R.C. 3105.73 permits lower courts to consider these factors when determining whether attorney fees should be awarded.

{¶150} The fifth assignment of error is without merit.

{¶151} In conclusion, the first, second, third, and fourth assignments of error have merit as set forth in the opinion. In all other aspects, the trial court's judgment is affirmed. Accordingly, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with the opinion.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.