[Cite as *Ellyson v. Ellyson*, 2025-Ohio-639.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

KELLY J. ELLYSON,

Plaintiff-Appellant,

v.

TRAVIS J. ELLYSON,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 CO 0026**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations
Division of Columbiana County, Ohio
Case No. 2022-DR-346

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Mark Lavelle*, for Plaintiff-Appellant and

*Atty. Amanda J. Jackson,* for Defendant-Appellee.

Dated: February 26, 2025

**Robb, P.J.**

{¶1}   Appellant, Kelly J. Ellyson, appeals the June 10, 2024 judgment issued by the Columbiana County Court of Common Pleas, Domestic Relations Division, overruling her objections to the magistrate's decision after the parties' final divorce hearing. Appellant contends the trial court erred by relying on an outdated real estate appraisal; by failing to maximize the value of the parties' marital assets; by failing to include gas well usage as marital property; by not addressing and dividing all of the retirement and savings accounts; and by finding certain stock shares were gifted to Appellee and not a marital asset.  For the following reasons, we affirm.

<u>Statement of the Facts and Case</u>

{¶2}   Appellant filed a complaint for divorce with children in September of 2022. Appellee, Travis J. Ellyson, filed an answer and counterclaimed for divorce.

{¶3}   The parties' final divorce hearing was held in October of 2023 before the magistrate.  The parties reached an agreement regarding custody and visitation, but did not agree about several property issues.  Both Appellant and Appellee asked the trial court to award them the parties' newer home.

{¶4}   The trial included the following testimony and evidence.  Appellee is a fourth generation farmer and is employed by his family's dairy farm, which is incorporated.  Both of the parties' sons also work for the farm.

{¶5}   At the time of trial, Appellee and the parties' two sons lived in the parties' newer home located at 8300 Ellyson Road.  Appellee and Appellant built the newer home together and moved into the new home in 2020.  The parties kept their other home, which they purchased together in 2005.

{¶6}   Appellee said Appellant has lived in their older home, located at 9213 Ellyson Road, since their separation.  The older home has a line of credit associated with it, and the newer home has a mortgage in both of the parties' names.  Both homes are located on the family farm, are less than a mile apart, and are on the same street.  Both houses get free natural gas from Appellee's family's farm.  (Tr. 1-8, 27.)

**{¶7}** Appellee's grandfather and his great aunt own the farmland on one side of the road. This side of the farm is approximately 180 acres. This is the side of the road where the parties' older home is located, 9213 Ellyson Road. The farm on the other side of the road consists of about 200 acres and is owned by Ellyson, Inc. The parties' newer home, 8300 Ellyson Road, is on this side of the road. (Tr. 8-11.)

**{¶8}** Appellee testified he was given five shares of stock in the family business in 2015. Appellee's father gifted him the stock shares, and his father paid for the taxes on the gift as well. (Tr. 16.)

**{¶9}** In June of 2021, Appellant advised Appellee that she no longer wished to be married. She left the parties' newer home and moved into their older home, which was vacant at the time. The parties had been renting out the older home. (Tr. 15-16.) The parties had maintained separate bank accounts and lived separately for about two years at the time of trial. (Tr. 35.)

**{¶10}** Appellee said he and Appellant lived together in their new house for about 18 months before she moved out. He believes there is enough equity in the value of the older home to compensate Appellant for her equity in their newer home. (Tr. 159-169.)

**{¶11}** Appellee and Appellant were initially given the approximate nine acres on which their new home was built in 2019 from Ellyson, Inc. They began building their home that year. The parties obtained a construction loan, which then became a conventional mortgage. Appellee said he wants to continue to reside in the newer home and does not want to sell it. At the time of trial, the parties owed about $319,000 on the mortgage associated with their newer home. Appellee testified he would not sell it to Appellant for $500,000. (Tr. 20-25.)

**{¶12}** Appellant testified on direct that she has a Bachelor of Science in nursing and has been a nurse for 20 years. She recently became unemployed and lost her sales job. (Tr. 38.)

**{¶13}** Appellant said she believes the parties' newer home is worth approximately $475,000 to $500,000. She said the parties have four marital IRA's, including two Roth IRA's. She was asked to review a quarterly statement from Capital Group American Funds, identified as Plaintiff's Exhibit B, during her testimony. It consists of six pages and

shows one primary account number, which is comprised of three total accounts.  The last three digits of each individual account are 017, 665, and 064.  (Plaintiff's Exhibit B.)

**{¶14}** Appellant agreed she left the parties' newer house in 2021 because she could not make Appellee leave.  Both houses get free natural gas from Ellyson, Inc.  She said the 9.5 acres on which their newer house sits was gifted to both parties from the company to allow them to build a home.  The house sits on one acre, and the other 8.5 acres are still farmed by Ellyson, Inc.  (Tr. 79-82.)

**{¶15}** Appellant identified two appraisals the parties obtained for a potential dissolution in 2021, as Defendant's Exhibits 1 and 2.  Appellant indicated she does not agree with the valuations in these appraisals, and her attorney objected, stating:

> The objection at this point is that without [the appraiser] coming in to testify as to that appraisal, anything he would report would be hearsay.
>
> . . . But [Appellee's counsel is] asking [Appellant] to, essentially, read off what would otherwise be hearsay in that report without the foundation from the person that did the appraisal.
>
> . . .
>
> [Appellee's counsel:]  Under the local rules, . . . it states that if appraisals have been provided at least 30 days prior to the date of trial, would be accepted by the court unless an objection is raised at that time.
> These have been available since 2021.  And they have been sent multiple times.
>
> . . .
>
> Based on that, I don't think it's necessary to have [the appraiser] here to introduce the appraisals for the Court's consideration provided both parties have seen them, . . . and knows what it says, and has for two years almost.

(Tr. 85-86.)

**{¶16}** At that point, the court asked Appellant's attorney when he first became aware of these appraisals.  He replied:  "I became aware of these appraisals probably December of '22, when I took over the case.  The appraisals . . . predate the divorce, and they are two years old."  (Tr. 87.)

**{¶17}** The court overruled the objection, noting the age of the appraisals goes to the weight of the evidence, not admissibility. (Tr. 88.) Appellant then indicated she wants the newer home, but does not want the older home. She tended to agree that if she were awarded the older home, she would sell it. (Tr. 88-89.)

**{¶18}** Earl Trimmer testified that he is the CPA hired by Ellyson, Inc. He explained the company is a C corporation. When Trimmer learned the company was trying to gift acreage to the parties, he advised the company that this was in violation of certain tax laws. He confirmed there was no corporate resolution or other writing approving the gifting of acreage to the parties. After being advised by Trimmer, Ellyson, Inc. decided to treat the gift of acreage as a sale. The acreage was valued at $19,665 at the time of the sale. There is a note owed by Appellee to the company that is still due, but neither party signed the note. (Tr. 109-123.)

**{¶19}** Trimmer also verified he was involved in the transfer of stock shares to Appellee. Trimmer said Appellee paid for five shares. He does not know if Appellant paid toward any shares of Ellyson, Inc. (Tr. 124.)

**{¶20}** Appellee's father, Michael Ellyson, also testified. Michael is the vice president of Ellyson, Inc. Michael agreed the parties have never paid for the acreage. He said the intent of the transfer was to keep the farm property in the family. (Tr. 138-144.) Michael also said when the company tried to give the real property to Appellee and Appellant, there was no writing or record evidencing the attempt. (Tr. 149.)

**{¶21}** Regarding the gift of stock, Michael said he and his wife purchased the five shares for Appellee and gifted it to him. Michael purchased shares from a cousin and gave some to Appellee. He also kept some shares for himself. (Tr. 145-148.)

**{¶22}** Appellant testified that although she is unemployed, she has applied to several jobs, including one 50 minutes away and another about a 30-minute drive from the farm. She does not anticipate being unemployed for long, and she just started receiving unemployment compensation from the loss of her previous employment.

**{¶23}** Both parties indicated there were one or two more retirement accounts than those identified at trial. At the conclusion of the final hearing, the magistrate asked the parties about the missing retirement accounts, and the parties agreed to supplement the record. (Tr. 200.)

{¶24} Appellant filed a "Trial Stipulation" on the same date of trial, which is signed by both parties' attorneys. It sets forth the value of Appellant's automobile. The stipulation also states the parties are owners of two Capital Group American Funds retirement accounts. The stipulation lists the last three digits of the two account numbers and the values of each: "Account … 064 has a balance of $104,343.77 as of September 30, 2023, [and] Account … 129 has a balance of $41,370.82 as of September 30, 2023." There are no statements or exhibits attached to the stipulation. (December 26, 2023, Trial Stipulation.)

{¶25} The magistrate issued a 13-page decision on December 26, 2023. Among other things, the magistrate awarded Appellee ownership of the parties' newer home and found the stock shares were gifted to Appellee, and as such, were not marital property subject to division. (December 26, 2023 Magistrate's Decision.)

{¶26} Appellant filed objections to the magistrate's decision on January 9, 2024. (January 9, 2024 Objection.) The trial court overruled Appellant's objections and adopted and affirmed the magistrate's decision. (June 10, 2024 Judgment.) Appellant raises five assignments of error.

### Assignments of Error

{¶27} Appellant's first assigned error contends:

"The Trial Court erred in determining the value of real property by using a Real Estate Appraisal that was outdated and not subject to the Local Rule regarding admission, as there was no proper foundation for the appraisals."

{¶28} This assignment consists of four arguments. Appellant claims the trial court erred by relying on an outdated appraisal that was hearsay. She also claims the court erred by not following its local rule and rejecting her testimony and willingness to pay $500,000 for the parties' newer home.

{¶29} Trial courts have broad discretion in valuing real property in a divorce action. We review decisions in this regard for an abuse of discretion, and thus, must affirm absent a finding that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶30} The admission and exclusion of evidence about the value of real property is also within the discretion of the trial court. Valuation is usually a factual issue left to the

discretion of the trier of fact, and although a trial court has significant leeway in valuing property, its valuation must be based on the evidence. *Anderson v. Anderson*, 2002-Ohio-1156, 74 (7th Dist.), citing *McCoy v. McCoy*, 91 Ohio App.3d 570, 578 (8th Dist.1993).

**{¶31}** The trial court also has wide discretion when determining the weight of the evidence and the credibility of witnesses. *Anderson,* citing *Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision*, 123 Ohio App.3d 166, 173 (6th Dist.1997).

**{¶32}** Testimony from an individual who made an offer to purchase the property is relevant and admissible evidence showing the value of the property. *See Berger v. Berger*, 2015-Ohio-5519, ¶ 6 (11th Dist.) (finding the exclusion of testimony from an individual offering to purchase husband's company improper). However, whether the offer was genuine goes to the weight of the evidence, not whether it was relevant and admissible. *Id*.

**{¶33}** In the fourth prong of Appellant's argument, she disagrees with the court's characterization and conclusion that her testimony about her willingness to pay $500,000 for the parties' home was "a strategy to drive up" the value of the marital asset. We find no abuse of discretion in this regard. The court was free to believe or reject the genuineness of Appellant's testimony and offer to buy the home.

**{¶34}** Further, the court may have taken this position based on her testimony that she had been applying to jobs that were more than 30 minutes away. Appellant also testified her boyfriend lives in a different county about 50 miles away, and she visits him there three or four nights per week. (Tr. 74-75; 96-97.) For these reasons, the court may not have believed she wanted to live in the parties' newer home.

**{¶35}** As for the first, second, and third aspects of Appellant's argument, i.e., the court erred by relying on an outdated appraisal that was hearsay and by not following its local rule, we find no abuse of discretion for the following reasons.

**{¶36}** Columbiana County Common Pleas, Domestic Relations Division, Local Rule 9.71 *Appraisals*, states in part:

> 1. If a party desires an independent appraisal of property, whether real, personal, or intangible, they shall notify opposing counsel or person

representing themselves and the Court in writing no later than thirty days after the status conference.

2. If a party does not request an independent appraisal of real property, the Court shall accept as fair market value of the real property the value listed on the tax duplicate of the Columbiana County Auditor's Office.

**{¶37}** As stated, Appellant identified two appraisals the parties obtained for a potential dissolution in 2021, marked as Defendant's Exhibits 1 and 2, under objection. Appellant acknowledged these appraisals appraised the parties' residences. However, she testified she does not agree with these valuations. Further, her attorney objected to her testimony, stating:

The objection at this point is that without him coming in to testify as to that appraisal, anything he would report would be hearsay.

. . . But [Appellee's counsel is] asking [Appellant] to, essentially, read off what would otherwise be hearsay in that report without the foundation from the person that did the appraisal.

. . .

[Appellee's counsel:] Under the local rules, . . . it states that if appraisals have been provided at least 30 days prior to the date of trial, would be accepted by the court unless an objection is raised at that time.

These have been available since 2021. And they have been sent multiple times.

. . .

Based on that, I don't think it's necessary to have [the appraiser] here to introduce the appraisals for the Court's consideration provided both parties have seen them, . . . and knows what it says, and has for two years almost.

. . .

THE COURT: That [the age of the appraisals] will go to the weight rather than admissibility.

(Tr. 85-87.)

**{¶38}** As Appellee contends, Appellant did not offer alternative or more recent appraisals. Appellant likewise did not provide the court with evidence of the valuations set forth by the Columbiana County Auditor's Office. Appellee's counsel, on the other hand, established the 2021 appraisals were sent to opposing counsel early on in the case, consistent with the local rule.

**{¶39}** Further, Columbiana County Local Rule 9.71 does not dictate what a court should do when there are competing appraisals or when one party offers an appraisal and the other urges the court to rely on the auditor's evaluation. Generally, when there are competing evaluations, a trial court has discretion to determine which to rely on since valuation is a factual issue left to the discretion of the trier of fact. *Anderson,* at ¶ 74.

**{¶40}** Here, however, there were no competing appraisals. Further, Appellant made no reference to the auditor's valuation and did not direct the court's attention to the auditor's valuations during trial. Accordingly, we can find no error in this regard.

**{¶41}** Furthermore, the court correctly found Appellant's argument that the appraisals were outdated went to the weight to be given the evidence, not admissibility. Thus, the court's decision to rely on them was not an abuse of discretion since they were the only appraisals offered.

**{¶42}** Further, while Appellant's counsel objected based on a lack of foundation and hearsay grounds at trial, Appellant does not direct this court's attention to law governing this aspect of her argument. "[I]t is not the function of the court of appeals to root out law in support of an argument, App.R. 16(A)(7) . . .." *Matter of E.T.*, 2023-Ohio-444, ¶ 58 (7th Dist.).

**{¶43}** Notwithstanding, counsel for Appellee argued the local rule governs admissibility, and the trial court evidently agreed. While this local rule does not explicitly address admissibility, we cannot conclude the court's application of the rule in this regard constitutes an abuse of discretion. Accordingly, this assignment lacks merit in its entirety and is overruled.

**{¶44}** Appellant's second assignment of error asserts:

"The Trial Court erred in not maximizing the value of the assets as the Plaintiff offered more for the real estate than the outdated Real Estate Appraisal."

**{¶45}** Here, Appellant claims her offer to purchase the former marital residence should have been used to value the property instead of the 2021 appraisal. She claims the court's failure in this regard resulted in a windfall to Appellee by giving him a larger share of the marital property.

**{¶46}** As stated, the trial court was free to believe or discredit the intent of Appellant's offer to purchase the parties' newer home for $500,000. The court did not find the offer was genuine, but instead found it was designed to increase its value. While it is not entirely clear what made the trial court take this position, it was well within its discretion to do so. *Berger v. Berger*, 2015-Ohio-5519, ¶ 6 (11th Dist.). Discretion is bestowed in the trier of fact since it is in the best position to observe a witnesses' demeanor, gestures, eye movements, voice inflections, and weigh credibility. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). It is axiomatic that a written record does not capture a person's outward behavior, facial expressions, and attitude. Consequently, this assigned error lacks merit and is overruled.

**{¶47}** Appellant's third assignment of error asserts:

"The Trial Court erred in not addressing specific assets of the marriage including the gas well usage and failed to acknowledge such as marital property."

**{¶48}** Appellant contends the court failed to include the gas well usage, a tangible value asset, as marital property subject to division. R.C. 3105.171, Division of marital property; separate property, states in part:

(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the

spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses . . .

(b) "Marital property" does not include any separate property.

**{¶49}** Appellant testified that both marital residences receive free natural gas from her husband's family company, Ellyson, Inc. Appellee likewise testified that both residences receive this benefit. He said there is natural gas on the farm that goes to both houses. He believed the company receives so many free gas hookups per acre. However, Appellee is not aware of the details of the contract governing Ellyson, Inc.'s receipt of natural gas. Although Ellyson, Inc.'s oil and gas lease was referenced during Appellee's testimony, it was not relied on during his testimony or offered as evidence. Further, when asked if both residences would continue to receive this benefit, Appellee said he was "not in charge of saying that." (Tr. 26-28.) There was also no evidence placing a value on this benefit.

**{¶50}** While both parties benefitted from receiving free natural gas at their two marital homes, the evidence shows the natural gas was the property of Ellyson, Inc. In addition, both marital homes continued to receive free natural gas at the time of trial, and each party was awarded one marital residence. Thus, the distribution was likely equitable since Appellant continued to receive free natural gas for her home, and there was nothing in evidence showing this benefit would cease. Last, neither party offered evidence as to the value of this benefit, such that the court was capable of dividing it if it were deemed a marital asset. This assigned error lacks merit.

**{¶51}** Appellant's fourth assigned error contends:

"The Trial Court erred in not addressing all the retirement and savings accounts owned and operated by the parties."

**{¶52}** To the extent Appellant argued to the trial court that there were missing retirement accounts, which the trial court failed to divide, she does not reassert this

Case No. 24 CO 0026

argument on appeal. Nevertheless, Appellant did not identify what accounts were allegedly missing or not accounted for in the court's division. She likewise does not identify where in the record the alleged missing accounts are set forth or referenced.

{¶53} Appellate courts are not courts of record. App. R. 12(A)(1). Absent record evidence of what was allegedly not divided, we can provide no relief. Further, Appellant now generally contends the trial court failed to divide the parties' "retirement and savings accounts," as if the court included none in its judgment. We disagree.

{¶54} The parties testified they have had separate bank accounts since separating. Thus, there were none subject to division.

{¶55} As for their retirement accounts, Appellant testified the parties have four marital retirement accounts. She was asked to review a quarterly statement from Capital Group American Funds, identified as Plaintiff's Exhibit B, during her testimony. It consists of six pages and shows one primary account number, which is comprised of three total accounts. The primary account number ends in 064. (Plaintiff's Exhibit B.) Thus, she identified one primary account subject to division.

{¶56} Thereafter, Appellant filed a "Trial Stipulation" on the date of trial, which is signed by both attorneys. The stipulation states the parties are owners of two Capital Group American Funds retirement accounts. The stipulation lists the last three digits of the two account numbers as 064 and 129. The stipulation states the balance of each. The stipulation is signed by counsel for both parties. (December 26, 2023, Trial Stipulation.)

{¶57} Further, the trial court identified and divided these accounts as marital assets in the judgment appealed. It states: "Capital Group American Fund Accounts ending in 064 and129 shall be divided equally between the parties . . . . All expenses associated with dividing the pension accounts . . . shall be divided equally between the parties." (June 10, 2024 Judgment.) The court also attached and incorporated a spreadsheet listing the marital assets subject to division to its judgment. This exhibit lists these retirement accounts as well.

{¶58} Thus, the trial court divided the parties' retirement accounts that were identified at trial and via stipulation. Consequently, this assignment lacks merit and is overruled.

Case No. 24 CO 0026

**{¶59}** Appellant's fifth assigned error contends:

"The Trial Court erred in determining that the stock of Ellyson Farms was a gift made specifically to the Appellee and not collectively to the Appellant and Appellee."

**{¶60}** Marital property does not include separate property. R.C. 3105.171(A)(3)(b). "In divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property[, and] upon making such a determination, the court shall divide the marital and separate property equitably between the spouses . . ." R.C. 3105.171(B).

> (6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> . . .
>
> (viii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

R.C. 3105.171(A)(6)(a)(vii).

**{¶61}** Thus, Appellee had to establish by clear and convincing evidence the stock shares were given to him as a gift.

**{¶62}** Because the trial court's characterization of the parties' property as marital or separate involves a factual inquiry, we will not overturn such a determination unless it is against the manifest weight of the evidence. *Miller v. Miller,* 2009-Ohio-3330, ¶ 20 (7th Dist.); *Thompson v. Thompson*, 2024-Ohio-2147, ¶ 31 (4th Dist.); *An v. Manson,* 2006-Ohio-6733 (10th Dist.). Thus, we should not disturb the trial court's judgment on appeal "if it is supported by some competent, credible evidence." *Miller* at ¶ 20, quoting *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 468 (1994).

> This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.

*Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist.1997), citing *In re Jane Doe I*, 57 Ohio St.3d 135 (1991); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984).

{¶63} The magistrate determined, and the trial court agreed, the stock shares were given to Appellee as a gift. As stated, Appellee testified he was given five shares of stock in the family business in 2015. Appellee's father gifted him the stock shares, and his father paid for the taxes on the gift as well. (Tr. 16.)

{¶64} Appellee's father Michael also testified. Michael said he and his wife purchased the five shares for Appellee and gifted it to him about seven or eight years before the trial. He said the shares are in Appellee's name. Michael purchased the shares from a cousin. Michael kept some and gave some to Appellee. Michael said he also paid for the associated taxes. (Tr. 145-148.)

{¶65} However, the company CPA testified he was involved in the transfer of stock shares to Appellee. Trimmer said he believed Appellee bought the five stock shares. Yet Trimmer could not recall how Appellee paid for the stock and did not know if Appellant paid toward the Ellyson, Inc. stock shares. (Tr. 123-124.)

{¶66} In light of the foregoing, we cannot conclude the court's determination that the stock shares were gifted to Appellee by his parents is against the manifest weight of the evidence. Appellee and his father both testified it was a gift to Appellee, but Trimmer believed Appellee purchased the stock himself. The trial court was in the best position to weigh the evidence and assess the credibility of the competing testimony.

{¶67} The trial court's judgment is supported by some competent, credible evidence, and as such, this assigned error is overruled.

Conclusion

{¶68} In light of the foregoing, none of Appellant's assignments of error have merit. The trial court's decision is affirmed.

Hanni, J., concurs.

Dickey, J., concurs.

Case No. 24 CO 0026

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**